**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

Case No. 13-CV-00286-VEB

| | |
|---|---|
| JAMES J. SPRINGER, | |
| Plaintiff, | DECISION AND ORDER |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

In August of 2010, Plaintiff James J. Springer applied for Supplemental Security Income ("SSI") Benefits under the Social Security Act. The Commissioner of Social Security denied the application.

Plaintiff, represented by Dana C. Madsen, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 9).

On May 1, 2014, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 27).

## II. BACKGROUND

The procedural history may be summarized as follows:

On August 23, 2010, Plaintiff applied for SSI benefits, alleging disability beginning December 1, 2006. (T at 149-55).[1] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On March 27, 2012, a hearing was held before ALJ Marie Palachuk. (T at 28). Plaintiff appeared with his attorney and testified. (T at 52-61). The ALJ also received testimony from Dr. Demetri, a medical expert (T at 46-50) and Scott Whitmer, a vocational expert (T at 62-68).

---

[1] Citations to ("T") refer to the administrative record at Docket No. 19.

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

On April 13, 2012, ALJ Palachuk issued a written decision denying the application and finding that Plaintiff was not entitled to benefits under the Social Security Act. (T at 18-35). The ALJ's decision became the Commissioner's final decision on June 5, 2013, when the Social Security Appeals Council denied Plaintiff's request for review. (T at 1-6).

On July 31, 2013, Plaintiff, acting by and through his counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5). The Commissioner interposed an Answer on October 28, 2013. (Docket No. 18).

Plaintiff filed a motion for summary judgment on February 28, 2014. (Docket No. 23). The Commissioner moved for summary judgment on May 14, 2014. (Docket No. 28). Plaintiff filed a reply memorandum of law on May 28, 2014. (Docket No. 29). As noted above, the parties consented to the jurisdiction of a Magistrate Judge. (Docket No. 9).

For the reasons set forth below, the Commissioner's motion is granted, Plaintiff's motion is denied, and this case is closed.

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

# III. DISCUSSION

## A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§

4

404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case

of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

C.    **Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 23, 2010, the application date. (T at 23). The ALJ determined that Plaintiff's hepatitis C, psychotic disorder (secondary to polysubstance abuse), antisocial personality disorder, and polysubstance abuse were impairments considered "severe" under the Act. (Tr. 23-24).

The ALJ found that Plaintiff's impairments, including his substance abuse, met several of the impairments set forth in the Listings (specifically the Listings at §§ 12.03, 12.08, and 12.09). (T at 24-27).  The ALJ determined that if Plaintiff stopped the substance abuse, the remaining limitations would still cause more than a minimal impact on his ability to perform basic work activities and that, as such, Plaintiff would continue to have a severe impairment or combination of impairments. (T at 27).  However, the ALJ concluded that if Plaintiff stopped the substance abuse, his impairments would no longer meet any of the impairments set forth in the Listings. (T at 27-28).  The ALJ found that, if Plaintiff stopped the substance abuse, he would have the residual functional capacity ("RFC") to perform medium work, as defined in 20 CFR § 416.967 (c), except that he would be limited to simple, routine tasks and well-learned detailed tasks, with no contact with the general public and only occasional contact with co-workers. (T at 28-30).

The ALJ concluded that if Plaintiff stopped the substance abuse, he could perform his past relevant work as a roofer and assembler in a production plant. (T at 30-31).   As such, the ALJ concluded that Plaintiff's substance abuse was a contributing factor material to the disability benefits and Plaintiff was found to be not entitled to benefits. (Tr. 31).   As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

**D.    Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed.   He offers five (5) main arguments in support of this position.   First, Plaintiff argues that the ALJ's step two findings were flawed.   Second, Plaintiff argues that the ALJ did not conduct a proper analysis to determine whether drug and alcohol abuse were material factors contributing to disability.   Third, Plaintiff challenges the ALJ's credibility assessment.   Fourth, Plaintiff cites new evidence submitted after the ALJ's decision and argues that this evidence undermines the decision.   Fifth, Plaintiff contends that the hypothetical presented to the vocational expert was flawed.   This Court will address each argument in turn.

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

# IV. ANALYSIS

## A.    Step Two Severity Analysis

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a "severe" impairment. See 20 C.F.R. §§ 404.1520(c), 416.920(c).  The fact that a claimant has been diagnosed with and treated for a medically determinable impairment does not necessarily mean the impairment is "severe," as defined by the Social Security Regulations. *See, e.g.*, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). To establish severity, the evidence must show the diagnosed impairment significantly limits a claimant's physical or mental ability to do basic work activities for at least 12 consecutive months. 20 C.F.R. § 416.920(c).

The step two analysis is a screening device designed to dispose of *de minimis* complaints. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "[A]n impairment is found not severe . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303 (9th Cir. 1988) (quoting SSR 85-28).  The claimant bears the burden of proof at this stage and the "severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs."

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

SSR 85-28. Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situation." *Id.*

In this case, the ALJ determined that Plaintiff's hepatitis C, psychotic disorder (secondary to polysubstance abuse), antisocial personality disorder, and polysubstance abuse were impairments considered "severe" under the Act. (Tr. 23-24). The ALJ noted a diagnosis of bipolar disorder, but found that this was not a medically determinable impairment. (T at 24). Plaintiff challenges this finding. Plaintiff also contends that the ALJ erred in determining that his psychotic disorder was secondary to polysubstance abuse.

### 1.    Bipolar Disorder

During the administrative hearing, Dr. Demetri Dres, a non-examining medical expert, was asked to identify Plaintiff's psychological impairments. He testified that Plaintiff suffered from, *inter alia*, bipolar disorder. (T at 47). The ALJ did not accept this diagnosis, noting that under the *DSM-IV-TR*, "a clinician cannot make a diagnosis of bipolar disorder when the person's bipolar symptoms occur contemporaneously with illicit drug use." (T at 24). In October of 2006, Sean Caldwell, an examining behavioral counselor, and Dr. Mahlon Dalley, an examining

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

psychologist, reached a conclusion similar to that of the ALJ's, opining that Plaintiff had a "rule out" diagnosis of bipolar disorder "pending an extended period of [polysubstance] abstinence (six months or longer) . . . ." (T at 391-92).

"In the medical context, 'rule out' means to 'eliminate one diagnostic possibility from the list of causes of a patient's presenting signs and symptoms.' Thus, a 'rule out diagnosis' is a hypothesis rather than a conclusion." *Hall v. Astrue*, CV 10-512-SI, 2011 U.S. Dist. LEXIS 106188, at *11 n.2 (D. Or. Sep't 19, 2011) (quoting *Taber's Cyclopedic Medical Dictionary* 2057 (Donald Venes, M.D. ed., 2009)).

Plaintiff contends that the ALJ should have determined whether his bipolar disorder was disabling in the first instance without any consideration of substance abuse. Plaintiff states the correct legal standard, but misunderstands its application in this particular circumstance. When a Social Security disability claim involves substance abuse, the ALJ must first conduct the general five-step sequential evaluation without determining the impact of substance abuse on the claimant. If the ALJ finds that the claimant is disabled, then the ALJ conducts the sequential evaluation and second time and considers whether the claimant would still be disabled absent the substance abuse. *See Bustamente v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001), 20 CFR § 404.1535.

Here, consideration of the interplay between Plaintiff's substance abuse and possible bipolar disorder during the "first" sequential review was proper. This is because, as noted above, substance abuse affects the ability to diagnose bipolar disorder. It was necessary for the ALJ (and the medical providers) to determine whether a diagnosis of bipolar disorder was possible given Plaintiff's substance abuse. The ALJ concluded that no such diagnosis was possible because Plaintiff did not have an extended period of sobriety. (T at 24). This conclusion was supported by the assessment of Mr. Caldwell and Dr. Dalley. (T at 391-92).

Although the exact basis for Dr. Dres's diagnosis of bipolar disorder is not clear, the physician testified as follows "the record doesn't indicate that the claimant has ever had a period of sobriety *other than between 17 and 20 years old*." (T at 47)(emphasis added). Plaintiff relies on the reference to a period of sobriety, contends this provided a valid basis for Dr. Dres's bipolar disorder diagnosis, and challenges the ALJ's decision to discount the diagnosis.

However, Plaintiff does not cite to any evidence from an acceptable medical source documenting the alleged period of sobriety or indicating any prolonged period of sobriety thereafter. Plaintiff also provides no evidence or argument to undermine the central justification underlying the ALJ's decision, namely, that a bipolar disorder diagnosis was not possible given the lack of sustained sobriety

13

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

during the relevant time period.  Moreover, in terms of deciding between the opinion of Dr. Dres, a non-examining source, and the assessment of Mr. Caldwell and Dr. Dalley,[2] who examined Plaintiff, the ALJ was acting within her discretion in resolving conflicting evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th 1984).

Plaintiff's self-reports (T at 388) and opinions by sources other than acceptable medical sources (T at 280, 283, 406, 408) are not sufficient to establish a medically determinable impairment. *See* SSR 06-03p (evidence from an "acceptable medical source" is required to establish a medically determinable impairment).  This Court finds no error with regard to this aspect of the ALJ's decision.

## 2.    Psychotic Disorder

The ALJ recognized that Plaintiff suffered from psychotic disorder, but found that it was secondary to his substance abuse. (T at 23).  Plaintiff challenges this finding.  However, the record contains substantial evidence sufficient to sustain the ALJ's conclusion that Plaintiff's psychotic disorder was secondary to his substance abuse.  Dr. Dalley diagnosed amphetamine dependence (early full remission), cannabis dependence, and antisocial personality disorder, with a "rule out" diagnosis of bipolar II disorder, severe with psychotic features. (T at 394).

---

[2] Mr. Caldwell is a behavioral consultant and is, thus not an "acceptable medical source" under the Social Security Regulations.  However, his assessment was shared by Dr. Dalley, a psychologist, who is considered an acceptable medical source.  *See* 20 C.F.R. § 404.1502; SSR 06-03p.

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

In May of 2007, Jennifer Purcell, an examining nurse practitioner, diagnosed psychosis NOS, methamphetamine dependence in early, sustained remission, and marijuana abuse in early remission. (T at 229). However, a nurse practitioner is not an "acceptable medical source" under the Social Security Regulations. *See* 20 C.F.R. § 404.1502; SSR 06-03p. Plaintiff does not allege that Nurse Purcell was working closely with and under the supervision of a physician. Further, Nurse Purcell noted the interplay between Plaintiff's psychosis and substance abuse. In particular, she observed that "[g]iven his early initiation to meth, it was very difficult to say whether his psychosis would have happened had he not engaged in heavy drug use." (T at 229). Plaintiff self-reported to Nurse Purcell that he had not abused methamphetamine for 45 days and marijuana for 2 weeks. (T at 228).

In August of 2010, Patricia Fray, another examining nurse practitioner, diagnosed psychosis NOS, "rule out secondary to polysubstance abuse," and antisocial personality. (T at 352). At the time of Nurse Fray's assessment, Plaintiff had recently been hospitalized for a psychotic episode associated with amphetamine, methamphetamine, and marijuana abuse. (T at 348). Plaintiff reported that he "continues to use daily." (T at 351).

Dr. John Arnold, an examining psychologist, completed a psychological/psychiatric evaluation form in August of 2011. He diagnosed

cannabis abuse, amphetamine dependence (early full remission), and antisocial personality disorder with schizotypal features. (T at 398). Dr. Arnold did not diagnose psychosis.

Dr. Dres, the medical expert who testified at the administrative hearing, concluded that Plaintiff's psychosis was secondary to polysubstance abuse (T at 47), a finding consistent with the ALJ's conclusion.

This evidence is sufficient to sustain the ALJ's finding that Plaintiff's psychosis was secondary to his polysubstance abuse.

### 3.        Harmless Error

In the alternative, even if the ALJ should have found bipolar disorder and/or psychotic disorder (separate and apart from substance abuse) to be severe impairments, any such error(s) was harmless. The ALJ found that Plaintiff had multiple severe mental health impairments. She discussed, in depth, the evidence concerning Plaintiff's ability to perform basic work activities in light of those impairments and considered carefully the interplay between the limitations and Plaintiff's substance abuse. Accordingly, any arguable step two error was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)(holding that because ALJ considered any limitations posed by an impairment, even though it was not listed at step two, the step two error is harmless).

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

**B.    Substance Abuse Analysis**

When a Social Security disability claim involves substance abuse, the ALJ must first conduct the general five-step sequential evaluation without determining the impact of substance abuse on the claimant. If the ALJ finds that the claimant is not disabled, then the ALJ proceeds no further.  If, however, the ALJ finds that the claimant is disabled, then the ALJ conducts the sequential evaluation and second time and considers whether the claimant would still be disabled absent the substance abuse.  *See Bustamente v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001), 20 CFR § 404.1535.

The claimant bears the burden at steps 1-4 of the second sequential analysis of showing substance abuse is not a "contributing factor material to his disability." *Hardwick v. Astrue*, 782 F. Supp. 2d 1170, 1177 (E.D.Wa. 2011)(citing *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007)).  To meet this burden, the claimant "must provide competent evidence of a period of abstinence and medical source opinions relating to that period sufficient to establish his alcoholism is not a contributing factor material to his alleged mental impairments and disability." *Hardwick*, 782 F. Supp. 2d at 1177 (citing *Parra*, 481 F.3d at 748-49).

In this case, although the ALJ found that Plaintiff has not established bipolar disorder as a medically determinable impairment, the ALJ concluded that Plaintiff's

hepatitis C, psychotic disorder (secondary to polysubstance abuse), antisocial personality disorder, and polysubstance abuse were "severe" impairments. (T at 23-34). The ALJ found that Plaintiff's severe impairments, including his substance abuse, met several of the impairments set forth in the Listings (specifically the Listings at §§ 12.03, 12.08, and 12.09). (T at 24-27).   In particular, The ALJ determined that if Plaintiff stopped the substance abuse, the remaining limitations would still cause more than a minimal impact on his ability to perform basic work activities and that, as such, Plaintiff would continue to have a severe impairment or combination of impairments. (T at 27).

However, upon the second sequential evaluation, the ALJ concluded that if Plaintiff stopped the substance abuse, his impairments would no longer meet any of the impairments set forth in the Listings. (T at 27-28).  The ALJ further found that, if Plaintiff stopped the substance abuse, he would have the residual functional capacity ("RFC") to perform his past relevant work as a roofer and assembler in a production plant. (T at 30-31).  As such, the ALJ concluded that Plaintiff's substance abuse was a contributing factor material to the disability determination and Plaintiff was therefore not entitled to benefits. (Tr. 31).

Plaintiff contends that the medical records show that substance abuse was not a contributing factor material to the disability determination.  This Court finds that

substantial evidence supports the ALJ's finding that Plaintiff had not met his burden of proof as to this issue. Dr. Dalley noted that Plaintiff had mild or moderate functional limitations and opined that an "extended period of abstinence may decrease the subjective report of symptoms of depression and mania." (T at 394). Mr. Caldwell and Dr. Dalley reported that Plaintiff's "current cannabis and recent methamphetamine dependence may interfere with his ability to hold a job." (T at 392).

In January of 2011, Dr. James Bailey, a non-examining State Agency review consultant, assessed mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (T at 374).   In March of 2011, Dr. Bailey's assessment was reviewed and affirmed by State Agency consultant Dr. Patricia Kraft. (T at 385).

The record showed that Plaintiff's symptoms improved when he was hospitalized.  For example, in June of 2010, Plaintiff was hospitalized for a five-day period with psychotic symptoms. (T at 262-79).   He was diagnosed with methamphetamine dependence and ongoing substance abuse. (T at 264).  His Global

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

Assessment of Functioning ("GAF")[3] score on admission was 30 (T at 264). "A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Tagin v. Astrue*, No. 11-cv-05120, 2011 U.S. Dist. LEXIS 136237 at *8 n.1 (W.D.Wa. Nov. 28, 2011)(citations omitted). Upon discharge, after being abstinent from drugs for five days and receiving medication, Plaintiff's GAF score was 60 (T at 262), which is indicative of moderate symptoms or difficulty in social, occupational or education functioning. *See Sandburg v. Astrue*, No. CV-10-219, 2012 U.S. Dist. LEXIS 2018, at *22 (E.D.Wa. Jan. 6, 2012).

Ms. Purcell, the examining nurse practitioner, noted that given Plaintiff's "early initiation to using meth," it was "very difficult to say whether his psychosis would have happened had he not engaged in heavy drug use." (T at 229). Plaintiff told Ms. Purcell that he had considered mental health treatment in the past, but never "followed through" because he was engaged in substance abuse at the time. (T at 227). Plaintiff told Ms. Purcell that he completed a drug treatment program when he

---

[3] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

was 17.   Thereafter, he maintained employment and sobriety for a period of 18 months. (T at 228).

Ms. Fray, another examining nurse practitioner, reported that Plaintiff lived with his mother and his 12-year old daughter. (T at 348).  Plaintiff admitted that he smoked marijuana "every day and every night . . . ." (T at 348).  According to Ms. Fray, Plaintiff described his extensive criminal history "[i]n a braggart fashion" and with a smile. (T at 350).  He told Ms. Fray he has avoided jail time by agreeing to substance abuse treatment, but then continued to reoffend. (T at 350).   Ms. Fray noted that Plaintiff was refusing substance abuse treatment at the time of her report. (T at 351).  Plaintiff was involved with dealing drugs and admitted to being able to "set up" and follow through with the logistical requirements of his drug-dealing "business," including tracking times and places of drug transactions. (T at 350).  He complained of paranoia and hallucinations, which were described as secondary to substance abuse. (T at 350).

Dr. Arnold noted that Plaintiff experienced irritability, apathy, poor attitude, poor social and coping skills, sleep disturbances, and poor motivation. (T at 399). He opined that Plaintiff's substance abuse predated and exacerbated these symptoms. (T at 399).  Dr. Arnold conducted two examinations during the relevant

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

time period.  Plaintiff appeared intoxicated during the first examination and admitted to having used marijuana prior to the second. (T at 400).

Dr. Dres, the medical expert, noted that it was difficult to evaluate the link between Plaintiff's mental health symptoms and substance abuse because Plaintiff had very few periods of sustained sobriety. (T at 47).  He opined that Plaintiff was dealing with an "intricately tied process that quite likely carrie[d] the predisposition [toward mental illness] from genetics, as well as, [an] intensification by environmental factors, meaning drugs." (T at 49).

The ALJ found this evidence sufficient to establish that substance abuse was a contributing factor material to the disability determination. (T at 28-30).  Plaintiff offers an alternate interpretation of the evidence, noting that several sources (e.g. Dr. Dres and Nurse Purcell) found it difficult to parse out the extent to which Plaintiff's mental health limitations were impacted by his substance abuse.    Plaintiff's argument is flawed in two respects.

First, it is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Richardson*, 402 U.S. at 400.  If the evidence supports more than one rational interpretation, this Court may not substitute its judgment for that of the Commissioner. *Allen v. Heckler*, 749 F.2d 577, 579 (9th 1984). If there is substantial evidence to support the

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the Commissioner's finding is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

Second, Plaintiff bore the burden of proving his substance abuse is not a contributing factor material to the disability determination. *Parra v. Astrue*, 481 F.3d 742, 744-45, 748 (9th Cir. 2007). "Evidence that is inconclusive does not satisfy this burden." *Schwanz v. Astrue*, No. 10-CV-795, 2011 U.S. Dist. LEXIS 110832 at *29-32 (D. Or. Sep't 28, 2011)(citing *Parra*, 481 F.3d at 749-750)). In other words, evidence of some difficulty pinpointing the precise relationship between Plaintiff's extensive substance abuse and mental health issues is not affirmative evidence sufficient to satisfy the applicable burden of proof.

Accordingly, this Court finds no basis on which to disturb the ALJ's analysis with regard to substance abuse and disability.

## C.    Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. § 404.1529(b), 416.929; SSR 96-7p.

In this case, Plaintiff testified as follows: He stopped working in September of 2000 after being injured on the job. (T at 53).  He experiences swelling of the hands and fatigue related to hepatitis. (T at 53-54).  He had not used any illegal drugs during the past 4 months. (T at 55).  He frequently experiences anger and aggression and has difficulty relating to others when his medications are not regulated. (T at 56).  He has sleep difficulties and relies on his parents for transportation. (T at 57).  Walking is limited to a "couple of miles" and standing causes fatigue and leg numbness. (T at 58).  He has no problem sitting.  (T at 59).  Lifting is limited to 30-

40 pounds. (T at 58).   Frequent stress headaches are an issue. (T at 58).   He is impatient and has intermittent memory problems. (T at 59).

The ALJ found that if Plaintiff stopped his substance abuse, his medically determinable impairments could reasonably be expected to produce some of the alleged symptoms.   However, the ALJ concluded that not all of Plaintiff's allegations were credible. (T at 29).   This Court finds the ALJ's assessment supported by substantial evidence.

As discussed above, Dr. Dalley concluded that Plaintiff had mild or moderate functional limitations and opined that an "extended period of abstinence may decrease the subjective report of symptoms of depression and mania." (T at 394). The State Agency review consultants assessed mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (T at 374, 385). Plaintiff's symptoms improved when he was hospitalized, medicated, and abstained from substance abuse. (T at 262, 264). Dr. Arnold found that Plaintiff's substance abuse predated and exacerbated his mental health symptoms. (T at 399).   Plaintiff was noted to describe his criminal history and drug use "[i]n a braggart fashion" and with a smile. (T at 350).

Where, as here, substantial evidence supports the ALJ's credibility determination, this Court may not overrule the Commissioner's interpretation even if "the evidence is susceptible to more than one rational interpretation." *Magallanes*, 881 F.2d 747, 750 (9th Cir. 1989); *see also Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999)("[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the [Commissioner].").

## D.    Additional Evidence

The Appeals Council is required to consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b).   The Appeals Council "will then review the case if it finds that the [ALJ']s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b)."

In the Ninth Circuit, when the Appeals Council considers new evidence in the context of denying the claimant's request for review, the reviewing federal court must "consider the rulings of both the ALJ and the Appeals Council," and the record before the court includes the ALJ's decision and the new evidence. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996).   Because the Appeals Council's decision to deny the claimant's request

for review is not a "final decision" by the Commissioner, the federal courts have no

jurisdiction to review it.  Rather, the question presented in such cases is whether "the

ALJ's decision is supported by substantial evidence after taking into account the

new evidence." *Acheson v. Astrue*, No. CV-09-304, 2011 U.S. Dist. LEXIS 25898,

at *11 (E.D. Wash. Mar. 11, 2011); *see also Taylor v. Comm'r of Soc. Sec. Admin.*,

659 F.3d 1228, 1233 (9th Cir. 2011).  If the new evidence creates a reasonable

possibility that it would change the outcome of the ALJ's decision, then remand is

appropriate to allow the ALJ to consider the evidence. *Mayes v. Massanari*, 276

F.3d 453, 462 (9th Cir. 2001).

In this case, Plaintiff submitted a second evaluation performed by Dr. Arnold

in August of 2012, approximately 4 months after the ALJ's decision.  Dr. Arnold

noted marked irritation, low frustration tolerance, and verbal aggression; moderate

apathy and poor attitude; mild tension and mild social anxiety. (T at 220).  He

diagnosed amphetamine dependence, early full remission (per self-report), cannabis

abuse, early full remission (per self-report), and antisocial personality disorder with

schizotypal features.  (T at 220).  Dr. Arnold opined that Plaintiff's impairments as

of the date of the evaluation not primarily the result of alcohol or drug use within the

past 60 days. (T at 221).  Dr. Arnold based this conclusion on Plaintiff's report that

he had been abstinent for 7 months. (T at 221).

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

This Court finds that Dr. Arnold's August 2012 evaluation does not create a reasonable possibility of a different decision by the ALJ.  It is reasonable for an ALJ to discount a physician's opinion predicated on subjective complaints found to be less than credible. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009). Here, Dr. Arnold's assessment is based on Plaintiff's self-report of abstinence.  (T at 221).   As outlined above, the ALJ had ample reason for discounting Plaintiff's credibility.   Moreover, the additional evidence provides an additional reason for doubting Plaintiff's veracity.  Plaintiff told Dr. Arnold in August of 2012 that he had abstained from substance abuse for 7 months, which would mean he stopped his substance abuse in January or February of 2012.  However, during the administrative hearing in March of 2012, Plaintiff testified that he had not used illegal drugs during the prior 4 months, which would have been November of 2011. (T at 55).

Plaintiff offers no reason to believe the ALJ, having already discounted his credibility, would have adopted an assessment from an examining provider based, in material part, on claimant's self-reported abstinence.

Accordingly, Dr. Arnold's August 2012 assessment does not provide a basis for disturbing the ALJ's decision.

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

## E.    Vocational Expert Testimony

The ALJ received testimony from Scott Whitmer, a vocational expert.  The ALJ asked Mr. Whitmer to assume a claimant of the same age, education, and work experience as Plaintiff. (T at 65).  The hypothetical claimant was limited to medium work, with the ability to understand, remember, and carry out simple, routine, repetitive tasks and well-learned detailed tasks; he was unable to have any contact with the general public and only occasional contact with co-workers; he was able to maintain concentration, persistence, and pace to complete an eight-hour day at a productive level. (T at 66).  The vocational expert testified that the hypothetical claimant could perform Plaintiff's past relevant work as a roofer and assembler. (T at 66-67).

Plaintiff contends that he is not able to consistently act appropriately, even when he does not engage in substance abuse, and (as such) the ALJ's reliance on the vocational expert's testimony was misplaced.  During the hearing, Plaintiff's counsel asked whether the hypothetical claimant could perform any full-time gainful work if he was not able to consistently demonstrate appropriate behavior. (T at 68).  Mr. Whitmer opined that this limitation would preclude employment. (T at 68).  However, the ALJ was not bound to accept this limitation because he determined that Plaintiff had not met his burden of proving that substance abuse was not a

contributing factor material to the disability determination. An ALJ is not obliged to accept as true limitations alleged by Plaintiff and may decline to include such limitations in the vocational expert's hypothetical if they are not supported by sufficient evidence. *See Martinez v. Heckler*, 807 F.2d 771 (9th Cir. 1986); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

## V. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Commissioner is GRANTED summary judgment and that Plaintiff's motion for judgment summary judgment is DENIED.

## VI. ORDERS

**IT IS THEREFORE ORDERED** that**:**

Plaintiff's motion for summary judgment, **Docket No.  23**, is **DENIED.**

The Commissioner's motion for summary judgment, **Docket No.  28**, is **GRANTED**.

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB

The District Court Executive is directed to file this Decision and Order, provide copies to counsel, enter judgment in favor of the Commissioner and **CLOSE** the file.

DATED this 7th day of July, 2014.

/s/Victor E. Bianchini

VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – SPRINGER v COLVIN 13-CV-00286-VEB